1          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF COLORADO
2

Criminal Action No. 12-CR-00010-MSK
3

UNITED STATES OF AMERICA,
4

    Plaintiff,
5

vs.
6

SHEPS H. KHAMSAHU,
7

    Defendant.
8

_____
9

**REPORTER'S TRANSCRIPT**
10                    (Hearing on Change of Plea

11 _____

12         Proceedings before the HONORABLE MARCIA S. KRIEGER,

13 Judge, United States District Court for the District of

14 Colorado, commencing at 11:04 a.m., on the 16th day of May,

15 2012, in Courtroom A901, United States Courthouse, Denver,

16 Colorado.

17                    **APPEARANCES**

18         GUY TILL, Assistant U.S. Attorney, 1225 17th Street,

19 Suite 700, Denver, Colorado, 80202, appearing for the

20 plaintiff.

21         JOSEPH SAINT-VELTRI, Attorney at Law, 900 Logan Street

22 Denver, Colorado, 80203, appearing for the defendant.

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
      Produced via Computer by Paul Zuckerman, 901 19th Street,
25        Room A259, Denver, Colorado, 80294, (303) 629-9285

1          **PROCEEDINGS**

2          (In open court at 11:04 a.m.)

3              *THE COURT:*  Please be seated.

4              The Court is convened today in Case No. 12-cr-10.

5     This is encaptioned the United States of America vs. Sheps H.

6     Khamsahu.

7              And I'm not sure if I pronounced that correctly.

8     Please correct my pronunciation, if you would.

9              *THE DEFENDANT:*  Khamsahu.

10             *THE COURT:*  Khamsahu.  Thank you.

11             The matter is set down for a change of plea.  Could I

12    have entries of appearance, please.

13             *MR. TILL:*  Good morning, your Honor.  Your Honor, I'm

14    Guy Till.  I'm an assistant U.S. attorney, representing the

15    Government.  Also present at counsel table to help me today is

16    ATF Special Agent Jason Cole.

17             *THE COURT:*  Good morning and welcome.

18             *MR. SAINT-VELTRI:*  Good morning, your Honor.  Joseph

19    Saint-Veltri, appearing on behalf of the defendant, who is

20    present in court.

21             *THE COURT:*  Good morning and welcome.

22             Are you ready to proceed?

23             *MR. SAINT-VELTRI:*  We are ready, your Honor.

24             *THE COURT:*  Thank you.  Would you and your client

25    please approach the lectern.

1          This matter comes before the Court for a change in the

2     defendant's plea, for re-arraignment pursuant to Rule 10, and

3     for consideration of and advisement with regard to the parties'

4     plea agreement in accordance with Rule 11, both of the Federal

5     Rules of Criminal Procedure.

6          The record reflects that the defendant was charged in

7     an indictment filed with this court on January 9, 2012.  He was

8     charged in Counts 31 and 32, according to the record.  He

9     entered a plea of not guilty to those charges.  And I

10     understand that pursuant to the written plea agreement of the

11     parties, he intends to change his plea to a plea of guilty to

12     Count 31 and the Government intends to dismiss Count 32; is

13     that correct?

14          *MR. TILL:*  Yes, your Honor, it is.

15          *MR. SAINT-VELTRI:*  Yes, your Honor.

16          *THE COURT:*  Thank you.  Would you please re-arraign.

17          *MR. TILL:*  May it please the Court, Counsel, sir, are

18     you the same Sheps H. Khamsahu who is named in Count 31 of the

19     indictment returned on January 9, 2012, in case 12-cr-0010-MSK?

20          *THE DEFENDANT:*  Yes.

21          *MR. TILL:*  Sir, in Count 31, the grand jury alleged

22     that between on or about January 1, 2005, and on or about

23     September 30, 2011, within the State and District of Colorado,

24     the defendants -- and it names a number of people including

25     yourself, sir; and you are I believe on that list identified as

1   Defendant No. 7 -- knowingly agreed with one another and with

2   other persons to the grand jury known and unknown to maintain

3   and use a place, to wit: the premises informally known as the

4   Hell's Lovers Motorcycle Club clubhouse for the purpose of

5   using and distributing quantities of a substance containing a

6   detectable amount of cocaine, a Schedule II controlled

7   substance, and quantities of a substance and mixture containing

8   a detectable amount of marijuana, a Schedule I controlled

9   substance.

10          Sir, do you feel like you understand this charge?

11          THE DEFENDANT:  Yes.

12          MR. TILL:  Sir, at this time, how do you plead to this

13   charge?  Do you plead not guilty, or do you plead guilty, sir?

14          THE DEFENDANT:  Guilty, sir.

15          MR. TILL:  Thank you, sir.

16          THE COURT:  Thank you.

17          As of this moment, sir, you are not bound by your plea

18   of guilty.  Indeed, you're not bound by this plea until I

19   accept it.  You can change your mind at any time during this

20   hearing until I accept your plea.

21          In order to accept your plea, I have to be sure you

22   understand the charges that have been brought against you; you

23   understand your choices and the consequences that flow from

24   those choices.  I have to be sure that your decision to plead

25   guilty is voluntary and you haven't been pressured into that

1    decision.  I have to be convinced that there is a factual basis

2    to support your plea.

3           Throughout this hearing, I want you to let me know if

4    there is anything you don't understand or if you have any

5    questions.  I will ask you a series of questions; and if at any

6    time you'd like to consult with your counsel, please just let

7    me know and we'll take a brief recess so you can confer

8    privately.

9           It's important that you answer my questions truthfully

10   and completely because the answers to your questions -- to my

11   questions are what I evaluate in order to determine whether I

12   can accept your plea or not.

13          Indeed, just like a witness, you take a solemn oath

14   promising to tell truth.  And if you don't, your answers can be

15   used against you if an action is brought against you for false

16   statement or perjury.

17          Do you understand?

18          *THE DEFENDANT:*  Yes, your Honor.

19          *THE COURT:*  Do you want to proceed?

20          *THE DEFENDANT:*  Yes, your Honor.

21          *THE COURT:*  Would you please administer the oath.

22          *THE COURTROOM DEPUTY:*  Please raise your right hand.

23       (Defendant sworn.)

24                          **EXAMINATION**

25   *BY THE COURT:*

1   *Q.* Sir, how old are you?

2   *A.* 39.

3   *Q.* What level of school did you complete?

4   *A.* B.A.

5   *Q.* Any difficulty reading or writing?

6   *A.* No, your Honor.

7   *Q.* Within the last 24 hours, have you taken any medication?

8   *A.* No, your Honor.

9   *Q.* Within the last 24 hours, have you used any drug or

10  alcohol?

11  *A.* No, your Honor.

12  *Q.* To the best of your knowledge, have you ever been diagnosed

13  with a form of mental illness?

14  *A.* No, your Honor.

15  *Q.* Is there anything about the way you feel today physically

16  or emotionally that makes it hard for you to understand what is

17  happening?

18  *A.* No, your Honor.

19  *Q.* Have you read and do you understand the charges against

20  you?

21  *A.* Yes, your Honor.

22  *Q.* Have you discussed these charges with Mr. Saint-Veltri?

23  *A.* Yes, your Honor.

24  *Q.* Have you asked him all the questions you had about them?

25  *A.* Yes, your Honor.

1    *Q.*  Has he answered all your questions?

2    *A.*  Yes, he has.

3    *Q.*  Are there any other questions you want to ask him?

4    *A.*  Not at this time.

5              *THE COURT:*  Mr. Saint-Veltri, could you identify the

6    plea agreement for the record, please.

7              *MR. SAINT-VELTRI:*  The proposed plea agreement is

8    Court Exhibit 1, which the defendant has at the lectern.

9              *THE COURT:*  Thank you.

10   *BY THE COURT:*

11   *Q.*  Sir, would you please turn to Exhibit 1.

12            Have you read this document?

13   *A.*  Yes, I have, your Honor.

14   *Q.*  Have you discussed it with Mr. Saint-Veltri?

15   *A.*  Yes, I have.

16   *Q.*  Have you asked him all the questions you had about it?

17   *A.*  Yes, I have, your Honor.

18   *Q.*  Has he answered all your questions?

19   *A.*  Yes, he has.

20   *Q.*  Are there any other questions you want to ask him about it?

21   *A.*  Not at this time, your Honor.

22   *Q.*  This document has a lot of legal language in it.  Do you

23   understand what it says and what it means?

24   *A.*  Yes, your Honor.

25   *Q.*  Does it reflect all of your agreement with the Government?

1  *A.*  Yes, your Honor.

2  *Q.*  Did you sign it?

3  *A.*  Yes, your Honor.

4  *Q.*  Is that your signature at the end of the document?

5  *A.*  Yes, it is, your Honor.

6  *Q.*  Let's focus on a couple of provisions here in the

7  agreement.  First of all, let's turn to page 4, the paragraph

8  that begins with E.  In this paragraph are limitations on your

9  right to appeal and your right to collaterally attack your

10  conviction.  In fact, under the terms of this paragraph, you

11  are giving up your right to appeal your conviction and your

12  sentence except under very limited circumstances.

13      Those circumstances are if I should impose a sentence

14  that exceeds the maximum statutory penalty, or after

15  determining the guideline range I depart or vary upwardly from

16  it, or if I determine that there is an adjusted offense level

17  greater than 21 and I impose a sentence based on that offense

18  level determination under the Sentencing Guidelines.

19      In addition, your giving up your right to challenge

20  the prosecution or conviction or sentence by collateral attack.

21  We call that a writ of *habeas corpus*.  And you're limited to

22  circumstances where there is a retroactive change in the

23  guidelines or a sentencing statute, circumstances where you

24  contend that Mr. Saint-Veltri did not provide you with

25  effective assistance of counsel, or circumstances where you

1    claim there has been prosecutorial misconduct.  And then there

2    is one caveat, the last sentence of this paragraph: that should

3    the Court impose -- I'm sorry -- should the Government appeal

4    from the sentence imposed by the Court, you are released from

5    the waiver.

6            Do you understand these provisions?

7    A.  Yes, your Honor.

8    Q.  Do you also understand that although this agreement

9    anticipates that the Government could request a downward

10   departure for your cooperation under 5K1.1 of the guidelines,

11   they're not obligated to do so.  Do you understand that?

12   A.  Yes, your Honor.

13   Q.  And do you also understand that even if they requested that

14   departure, the Court can grant or deny that request?

15   A.  Yes, your Honor.

16   Q.  And do you also understand that if the Court were to grant

17   that request, the Court nevertheless would have to determine

18   what sentence was appropriate under 18 U.S.C. Section 3553 and

19   after granting that request could impose a higher sentence as a

20   variant sentence?

21   A.  Yes, your Honor.

22   Q.  Do you have any questions about those possibilities?

23   A.  No, your Honor.

24           THE COURT:  Okay.  Mr. Saint-Veltri, does Exhibit 1

25   also bear your signature?

1      MR. SAINT-VELTRI:  It does, your Honor.

2      THE COURT:  Did you review the plea agreement with

3  your client?

4      MR. SAINT-VELTRI:  Yes, your Honor.

5      THE COURT:  He's indicated that you've answered all of

6  his questions.  Are you satisfied that he understands the

7  contents of Exhibit 1?

8      MR. SAINT-VELTRI:  I am, your Honor.

9      THE COURT:  Did you review the discovery in this case

10  matter?

11      MR. SAINT-VELTRI:  Thoroughly, your Honor.

12      THE COURT:  And does it comport with the facts that

13  are recited here in the agreement?

14      MR. SAINT-VELTRI:  It does, your Honor.

15      THE COURT:  Mr. Till, does Exhibit 1 also bear your

16  signature?

17      MR. TILL:  Yes, your Honor, it does.

18  BY THE COURT:

19  Q.  Mr. Khamsahu, there is a statement of what the Government

20  believes it could prove if this matter went to trial in

21  Exhibit 1.  By entering into the plea agreement, you are

22  admitting that these facts are true.  I'll treat them as true

23  both for purposes of considering your plea and also for

24  purposes of sentencing.

25      Therefore, I'm going to ask Mr. Till to recite the

1    facts you have agreed to.  Listen closely to what he says

2    because with he finishes I'm going to ask you if, indeed, these

3    facts are true.  You must tell me if you have any disagreement

4    as to the facts recited by Mr. Till.  Do you understand?

5    *A.*  Yes, your Honor.

6              *THE COURT:*  Thank you.

7              Please recite the facts to which the parties agree.

8              *MR. TILL:*  Yes, your Honor.

9              Your Honor, between January of 2005 and January of

10   2012, as witnessed in part by an ATF undercover special agent

11   and a number of confidential informant human sources of

12   information working with law enforcement, on Thursday, Friday,

13   and Saturday nights of the average week, the premises

14   informally known as the Hell's Lovers Motorcycle Club clubhouse

15   located in the Denver metropolitan area with the District of

16   Colorado was the scene of gatherings where Hell's Lovers

17   Motorcycle Club members and visitors consumed marijuana and

18   cocaine.  The Hell's Lovers Motor Cycle Club clubhouse was a

19   scene of marijuana consumption by 30 to 40 persons on a given

20   Friday or Saturday night.

21             The routine and repeated use of marijuana and cocaine

22   at Hell's Lovers Motorcycle Club clubhouse was known to the

23   defendant and other Hell's Lovers Motorcycle Club members.  The

24   defendant knew marijuana was shared and used routinely and

25   regularly at the Hell's Lovers Motorcycle Club clubhouse.  The

defendant used marijuana at the clubhouse.

For periods of time during the conspiracy starting at some point in 2007, the defendant was a fully patched and christened member of Hell's Lovers Motorcycle Club. Eventually, the defendant held a position of leadership within Hell's Lovers Motorcycle Club.

The Hell's Lovers Motorcycle Club clubhouse was supported in part by proceeds from liquor sales at the clubhouse and by dues paid by the defendant and other members of Hell's Lovers Motorcycle Club, including fully patched and christened members, probationary members, prospective members, and property of, quote/unquote, "female associates."  Clubhouse expenses such as rent and utilities were paid by the Hell's Lovers Motorcycle Club chapter treasurer using proceeds from sales at the clubhouse and Hell's Lovers Motorcycle Club dues.

So basically, it functioned as an after hours club where they engaged in their social activities, which did include consumption of large amounts of marijuana on a regular basis, and the defendant and the other members all were aware of that.  That was part of their common practice, routine course of activities.

The parties stipulate and agree for the purposes of this plea agreement to make calculations based on marijuana dosage information from the quote, "typical weight per unit table," unquote, in the application notes for Section 2D1.1.

1    So we have agreed one marijuana cigarette weighs .5 grams.

2    That's just from the guidelines.  Two marijuana cigarettes

3    equal one gram.  2,000 marijuana cigarettes equals one kilogram

4    of marijuana.

5            The parties stipulate and agree for the purposes of

6    this plea agreement that 30 or more persons would use marijuana

7    at the clubhouse on Friday and Saturday nights unless the

8    Hell's Lovers Motorcycle Club chapter was on a road trip.  The

9    defendant contends there was a road trip each month.  The

10   Government believes were six to eight out-of-town road trips a

11   year.  The Government calculations use 44 weeks a year.  The

12   defense asserts the calculation should be based on 40 weeks a

13   year.  The government contends approximately 2,640 -- I'm

14   sorry -- 2,640 marijuana cigarettes would be used.  And

15   actually, there is an extra word in there.  There is the word

16   "thousand" after; so with the Court's permission, I will cross

17   that out and I'll initial the exhibit, your Honor.

18           THE COURT:  Thank you.

19           MR. TILL:  So instead -- That would be an enormous

20   amount of marijuana.  So 2,640 marijuana cigarettes equivalent

21   to approximately 1.32 kilograms of marijuana would be used at

22   the clubhouse each year.

23           In the seven-year period between 2005 and 2012, there

24   was an approximately six months when Hell's Lovers Motorcycle

25   Club did not have a clubhouse location, so approximately

1    8.85 kilograms of marijuana was used at the clubhouse according

2    to our basic stipulated parameters, your Honor.

3         From time to time within the last five years, firearms

4    were present at the clubhouse.

5         On January 20, 2012, a search warrant executed at the

6    clubhouse resulted in the recovery of three firearms.  One of

7    the firearms was described to investigators by a fully patched

8    and, quote, "christened," unquote, member of Hell's Lovers

9    Motorcycle Club as a, quote, "clubhouse," unquote, firearm.

10        The Colorado chapter of Hell's Lovers Motorcycle Club

11   at all times pertinent had more than ten members.  As a

12   national organization, the Hell's Lovers Motorcycle Club at all

13   times pertinent had more than 100 members.  The defendant was

14   an officer of the Colorado chapter of Hell's Lovers Motorcycle

15   Club and eventually, in 2011, held a national position as,

16   quote, "president," unquote, of the Western Region of Hell's

17   Lovers Motorcycle Club.

18        So those are our stipulated facts, your Honor.

19        May I correct that?

20        *THE COURT:*  You may.

21        *MR. TILL:*  Thank you.

22   *BY THE COURT:*

23   *Q.*  Mr. Khamsahu, are these facts true?

24   *A.*  Yes, your Honor.

25   *Q.*  Thank you.

1           Let's talk about penalty.  The maximum statutory

2    penalty for the offense charged in Count 31 is 20 years of

3    imprisonment, a fine of up to $500,000.  Both can be imposed.

4    A term of imprisonment can be followed by supervised release of

5    up to four years.  There is a mandatory $100 special assessment

6    fee.

7           In the federal system, we measure terms of

8    imprisonment in terms of months rather than years.  There is no

9    automatic reduction, there is no parole.  That means that every

10   month you're sentenced to serve, you'll serve.

11          There are a limited number of ways that a sentence can

12   be reduced.  One is through a motion brought shortly after the

13   judgment is entered.  It's referred to here as a Rule 35

14   motion.

15          Another is through a successful appeal and

16   resentencing, but you've waived most rights to have an appeal.

17          Another is through a collateral attack, but you've

18   waived most rights to collaterally attack.

19          And the fourth is in the discretion of the Bureau of

20   Prisons.  They can give credit for up for 54 days per year for

21   good time served.  That's their determination, not mine.  It's

22   based on your conduct while you're incarcerated.

23          Now, following a prison term, there is a period of

24   supervised release.  And here it could be up to four years.

25   While on supervised release, you are required to abide by a

1    number of conditions.  The conditions fall into two categories,

2    standard and special.  Standard conditions apply to all terms

3    of supervised release.  Special conditions are unique to you

4    and to your particular circumstances.

5            As you might guess, standard conditions are numerous;

6    and I'm only going to mention three, but you should understand

7    there are many more.

8            During a term of supervised release, you cannot commit

9    any new crimes, state, federal, or local.  You cannot use,

10    sell, or possess any illegal substances.  You cannot use, sell,

11    or possess any prohibited firearms.

12            As I said, there are many other standard conditions in

13    addition.

14            Then there are special conditions which would be

15    unique to your circumstances, and they might include such

16    things as periodic drug checks, participation in drug

17    rehabilitation programs, if you've got an alcohol issue

18    participation in an alcohol rehabilitation program, and if

19    you've got a mental health issue maybe participation in mental

20    health treatment or whatever else is appropriate to address

21    concerns regarding your ability to reintegrate into society.

22            Now, what's important to know about supervised release

23    is special conditions and standard conditions are treated

24    exactly the same way.  You have to abide by all of them all of

25    the time.  It's not good enough to say I tried and it's not

1    good enough to say I followed some but not others.

2         If you don't abide by all of the conditions all of the

3    time, the Probation Office, acting through the U.S. Attorney's

4    Office, can bring you back here to this courtroom or to another

5    courtroom and ask to have your supervised release term revoked.

6    And if it is revoked, you can be sent back to prison for

7    another term.

8         Now, the penalty that will be imposed in this case is

9    not just a function of the statute of conviction.  In deciding

10   what penalty is appropriate, the Court has to consider all of

11   the provisions of 18 U.S.C. Section 3553(a).  And that statute,

12   which I often refer to as the umbrella statute for sentencing

13   in the federal system because it applies to all sentencing,

14   includes two components: first of all, the objectives for

15   sentencing.  And the statute tells me that I have to impose a

16   sentence that is sufficient but not greater than necessary to

17   satisfy these objectives.  Your sentence, like all sentences,

18   has to promote respect for the law, provide just punishment,

19   adequately deter criminal conduct, protect the public from

20   further crimes by you, and provide you with needed educational

21   or vocational training, medical care, or other correctional

22   treatment in the most effective manner.

23        This same statute tells me what factors I can

24   consider.  I can consider the nature and circumstances of the

25   offense, your history and characteristics, the kinds of

1    sentences that are available, what the Federal Sentencing

2    Guidelines would require, the need to avoid unwarranted

3    sentence disparities among defendants with similar records

4    found guilty of similar conduct, and in the appropriate case I

5    would consider restitution.

6         I know that your attorney and Government's attorney

7    have calculated the sentence that they believe will apply under

8    the Federal Sentencing Guidelines.  That calculation begins at

9    page 9.

10        There are several things you need to know about this

11   calculation.  First of all, I recognize that you and the

12   Government don't agree on the calculation.  And you need to

13   understand that this plea agreement does not result in any

14   guaranteed sentence.

15        Secondly, this calculation is an estimate by your

16   attorney and by the Government's attorney as to how the

17   Sentencing Guidelines will apply; but it's just an estimate.

18   And at the time of sentencing, we will not be referring to this

19   agreement.  We will not be referring to these calculations.

20   We'll be referring to an entirely different document called the

21   presentence investigation report, and that's prepared by the

22   probation office of the Court.  It will have a calculation

23   under the guidelines, but it might not be the same calculation

24   as what's in this document.

25        You and your attorney and the Government's attorney

1    will have an opportunity to look at that calculation as well as

2    the rest of that report.  And if you have a dispute with it,

3    you'll be able to bring it to the attention of the probation

4    officer.  And if the probation officer doesn't adequately

5    address your concern, then you'll be able to raise it at the

6    time of sentencing.

7            And finally, you should understand that the

8    calculation under the guidelines is only one factor that I

9    consider in determining the sentence.  It's an important

10   factor, but it's not the only factor.  It's a starting point,

11   but it's not necessarily the ending point.

12           And that's because the sentence that is imposed has to

13   achieve the objectives of 18 U.S.C. Section 3553(a), those

14   objectives I mentioned just a minute ago.  And if the

15   calculations under the Sentencing Guidelines do not accomplish

16   those objectives, then I can impose a non-guideline sentence.

17   Sometimes we call it a statutory sentence.  Sometimes we call

18   it a variant sentence.  But essentially, it is a sentence

19   outside the guideline range.  And that sentence can be higher

20   or lower than the guideline range and higher or lower than the

21   guideline range as calculated based upon a departure that's

22   requested by the Government.

23           Now, your sentencing hearing will occur a number of

24   weeks from now.  And before that hearing, you and

25   Mr. Saint-Veltri will talk with the probation officer who is

 1    going to prepare the presentence report.  Please don't be

 2    confused by the title probation officer.  It's simply the title

 3    of the person preparing the report.  It has nothing to do with

 4    the sentence to be imposed.

 5         At the time of sentencing, your attorney and the

 6    Government's attorney will have an opportunity to make an

 7    argument as to what sentence is appropriate.  And that argument

 8    might include disagreements with what's in the presentence

 9    report, whether there should be a guideline sentence, whether

10    there should be a non-guideline sentence, how it should be

11    calculated, etc.

12         You will have an opportunity to make a statement, but

13    no one else may make a statement for you.  If you have folks

14    who want to make statements on your behalf, they may do so in

15    writing.  And they can send those letters to the probation

16    officer, not to me, but to the probation officer so that they

17    are incorporated into the presentence investigation report.

18         Do you understand the objectives and factors that will

19    be evaluated in determining your sentence?

20    A.  Yes, your Honor.

21    Q.  Do you understand the maximum sentence that can be imposed?

22    A.  Yes, your Honor.

23    Q.  Do you understand that the charge you're pleading guilty to

24    is a felony?

25    A.  Yes, your Honor.

1   Q.  Do you understand that if I accept this plea, this may

2   affect your civil rights, including your right to vote, hold

3   public office, serve on a jury, or lawfully possess a firearm?

4   A.  Yes, your Honor.

5   Q.  Do you understand that the sentence that is imposed may be

6   more severe than what is calculated in this plea agreement?

7   A.  Yes, your Honor.

8   Q.  Do you understand that if I accept your plea today, no

9   matter what the sentence is, you won't be able to withdraw it

10  at the time of sentencing?

11  A.  Yes, your Honor.

12  Q.  Do you have any questions about sentencing?

13  A.  No, your Honor.

14          THE COURT:  Thank you.

15          Mr. Saint-Veltri, can you identify the statement in

16  advance for the record, please.

17          MR. SAINT-VELTRI:  The defendant's statement in

18  advance of plea is Court Exhibit 2.  It is at the podium.

19          THE COURT:  Thank you.

20  BY THE COURT:

21  Q.  Mr. Khamsahu, would you please turn to Exhibit 2.

22          Have you read this document?

23  A.  Yes, your Honor.

24  Q.  Have you discussed it with Mr. Saint-Veltri?

25  A.  Yes, I have, your Honor.

1    Q.   Have you asked him all the questions you had about it?

2    A.   Yes, I have, your Honor.

3    Q.   Has he answered all your questions?

4    A.   Yes, he has.

5    Q.   Have you signed the document?

6    A.   Yes, I have.

7    Q.   Is that your signature at the end of the document?

8    A.   Yes, it is, your Honor.

9    Q.   Do you have any questions about what this document says or

10   means?

11   A.   No, your Honor.

12   Q.   Thank you.

13        Let's go over the constitutional rights you're giving

14   up today by making your plea of guilty.  Under the United

15   States Constitution, you have a number of rights and

16   protections.  And you're giving some of these up today by

17   making your plea of guilty.

18        First and foremost, you have a right to have a jury of

19   12 determine whether you are guilty of the charges brought

20   against you in Count 31 and 32.  Ordinarily, that trial would

21   take place here in this courtroom.  The jury would sit to my

22   left.  You and your attorney and the Government's attorney

23   would participate in the selection of the people who would

24   serve on that jury.  And both of you could exclude any juror

25   who could not be fair and impartial or who was unwilling or

1    unable to apply the law.

2          In addition, you'd have the opportunity to exclude a

3    few more people without giving any reason whatever.

4          Now, once the jurors have been selected, they all take

5    a solemn oath promising to consider only the evidence presented

6    here in the courtroom and to follow the instructions they

7    receive as to the law.  And one of the instructions that I give

8    them is that they must reach a unanimous decision based on what

9    they see and hear in order to find you guilty.  If any one of

10   them has a reasonable doubt as to your guilt, you cannot be

11   convicted.

12         Now, during the trial process, you have several other

13   constitutional rights.  For example, you have the right to

14   remain silent.  That right has several aspects.  Most simply it

15   means you don't have to answer any questions.  You don't have

16   to testify.  You don't have to make any statement.  But in

17   addition to that, the jury cannot consider your silence in

18   determining whether the Government has proven the charge or

19   charges against you, and your attorney gets to act in your

20   stead to challenge all of the evidence presented by the

21   Government, cross-examine witnesses, and argue to the jury.

22         The last aspect of this right is you can waive it.

23   You can decide at the time of trial or before trial that you

24   want to testify if -- and if so, you can testify.  If you want

25   to call witnesses to testify on your behalf, you can do so.

 1   And if they're reluctant to come forward, I would compel them

 2   to come forward.

 3           Now, during the trial, you also have the right to be

 4   represented counsel.  And where you cannot afford counsel,

 5   counsel is appointed to represent you without any cost to you.

 6   I know that Mr. Saint-Veltri has represented you well through

 7   this juncture in the case; but if you would prefer to go to

 8   trial, I would have every expectation that he would represent

 9   you ably and well at trial.

10           If you went to trial and you were convicted, you could

11   appeal both from your conviction and from your sentence.  But

12   you are giving up your right to appeal from your conviction by

13   entering a plea of guilty today.  And by virtue of the terms of

14   the plea agreement, you have significantly limited your right

15   to appeal from any sentence.

16           Do you understand that you will waive your right to a

17   jury trial and other constitutional rights associated with it

18   if you proceed with your plea of guilty?

19   A.  Yes, your Honor.

20   Q.  Is that what you want to do?

21   A.  Yes, your Honor.

22   Q.  Has anybody pressured you to make this plea today?  And

23   before you answer that question, please define anybody in your

24   mind as broadly as possible.  That includes family, friends,

25   neighbors, acquaintances, colleagues, members of the club,

1    people you don't get along with, enemies, anyone you may have

2    met, anyone you may not know.  That includes the attorneys,

3    people at the courthouse, or anybody else.  Has anybody

4    pressured you to make this plea today?

5    *A.*  No, your Honor.

6    *Q.*  Has anybody promised you something that isn't in the plea

7    agreement?

8    *A.*  No, your Honor.

9    *Q.*  Have you had enough time to review and consider and discuss

10   your plea and plea agreement?

11   *A.*  Yes, your Honor.

12   *Q.*  Are you satisfied with Mr. Saint-Veltri as your attorney?

13   *A.*  I am, your Honor.

14   *Q.*  Do you have any concerns, complaints, or criticism about

15   the legal representation you've received?

16   *A.*  No, your Honor.

17   *Q.*  Do you want to ask Mr. Saint-Veltri any questions?

18   *A.*  Not at this time, your Honor.

19   *Q.*  Do you have any questions for me?

20   *A.*  No, I don't.

21   *Q.*  Well, then now is the time to finalize your decision.  This

22   plea agreement, the one you and I have been discussing,

23   Exhibit 1:  Do you still want to proceed with it?

24   *A.*  Yes, your Honor.

25   *Q.*  You still want to enter a plea to the charge in Count 31?

1    A.   Yes, your Honor.

2              THE COURT:   Thank you.

3              Mr. Saint-Veltri, any reason not to accept the plea

4    and plea agreement?

5              MR. SAINT-VELTRI:   No, your Honor.

6              THE COURT:   Mr. Till?

7              MR. TILL:   No reason not to accept it, your Honor.

8              THE COURT:   Thank you.   The plea agreement anticipates

9    that the Government will dismiss Count 32.   Are you prepared to

10   do that today?

11             MR. TILL:   Yes, your Honor.   I would like to orally

12   request to dismiss Count 32 and also to dismiss the superseding

13   indictment as to Mr. Sheps Khamashu.

14             THE COURT:   Thank you.

15             Does the remaining charge, Count 31, reflect the

16   seriousness of the actual offense behavior?

17             MR. TILL:   Yes, your Honor, it does.

18             THE COURT:   Thank you.

19             And would the statutory purposes of sentencing be

20   undermined by this dismissal?

21             MR. TILL:   No, your Honor, it would not.

22             THE COURT:   Thank you.

23             Do either counsel desire to supplement the record?

24             MR. TILL:   Not from the Government, your Honor.

25             MR. SAINT-VELTRI:   No, your Honor.

1              THE COURT:  Thank you.  Then based upon the record

2    made in open court today, in Case No. 12-cr-10, encaptioned for

3    purposes this hearing as the United States of America vs. Sheps

4    H. Khamsahu, I hereby find that the defendant is fully

5    competent to entered an informed plea, he's been represented

6    through the course of this case and this proceeding.  He has no

7    objection, criticism, or complaint as to the representation

8    he's received.  He's aware of the nature of the charges against

9    him and the effects and consequences of his plea of guilty.  He

10   has knowingly and voluntarily waived fundamental constitutional

11   rights, including his right to a jury trial.  He understands

12   that the penalty to be imposed by the Court will be based in

13   part on the facts stated in the plea agreement and may exceed

14   the calculations in the plea agreement.  His plea of guilty is

15   voluntary and knowingly made, and the charge and plea is

16   supported by an independent basis in fact.

17           Pursuant to the terms of the plea agreement, the

18   Government has orally moved to dismiss Count 32 and the

19   superseding indictment.  I find that the remaining charge,

20   Count 31, adequately reflects the seriousness of the actual

21   offense behavior and that the agreement does not undermine the

22   statutory purposes of sentencing.

23           It's therefore ordered that Court Exhibits 1 and 2 are

24   received, the is plea as made in open court today is accepted,

25   and the defendant is adjudged guilty as charged in

 1   Count 32 -- I'm sorry -- 31.

 2        The motion to dismiss Count 32 and the superseding

 3   indictment is granted, but the effect of this order is stayed

 4   until the time of sentencing.

 5        The probation department shall conduct a presentence

 6   investigation and submit a presentence report as required by

 7   Rule 32.  The defendant with the assistance of counsel will

 8   participate in the investigation and cooperate fully with the

 9   probation department.

10        The sentencing hearing has been set for August 20,

11   2012, at 9:00 a.m.  That's the ordinary sentencing time for a

12   sentencing hearing; but it appears to me that based on the plea

13   agreement, there may be facts in dispute.  Do you need a longer

14   period of time to present evidence?

15        *MR. TILL:*  Your Honor, I don't believe that we will.

16   And, in fact, I think the only thing I could think of that

17   would ask the Government or cause the Government to ask for a

18   continuance is if the trial date for the main trial, which I

19   think is July 30 at this time -- we think it will be done by

20   August 20.  But if for some reason the trial were continued, we

21   probably would ask to continue Mr. Khamsahu's sentencing until

22   after the trial is completed.

23        *THE COURT:*  Well, I would not anticipate that this

24   trial is going to be completed by August 20, 2012.

25        *MR. TILL:*  All right.  Then perhaps we should get a

1    later date.

2         THE COURT:  I don't ordinarily delay sentencing until

3    after the trial has occurred.

4         MR. TILL:  You know, your Honor, now that you mention

5    it, I think I may have had an experience like that before.  I

6    get my judges mixed up.

7         THE COURT:  And we're not all consistent, and I'm

8    sorry about that.

9         MR. TILL:  If it's not too much trouble, perhaps we

10   could push it out a month or so.

11        THE COURT:  Well, we have an eight-week criminal trial

12   that's set to go on July 2.

13        Okay.

14        THE COURT:  And it's not this case.

15        MR. TILL:  All right, your Honor.

16        THE COURT:  And the criminal trial in that case will

17   go.

18        MR. TILL:  Well, Mr. Khamsahu is doing well on

19   pretrial release.  Perhaps if I have -- I would like to ask

20   perhaps if we could go out even further, your Honor, maybe

21   until September or October.

22        THE COURT:  Well, I think if the sole purpose is to

23   delay this until after the trial occurs, I'm not inclined to

24   grant the motion at this point.  You've reserved in the terms

25   of the plea agreement the ability to address under Rule 35 any

1    provision for modification of a sentence based upon

2    cooperation.  And as a consequence, I'm happy to entertain a

3    written motion, if you want to make one at some later point in

4    time; but I'm not inclined to continue the hearing at this

5    point.

6              MR. TILL:  Your Honor, if I could elaborate a little,

7    I don't want to argue with the Court; but I would like to give

8    the Court a little more information.  I think a certain amount

9    of, you know, bravery and courage is being required of

10   Mr. Khamsahu to testify in this matter.  And it's not just --

11   if he is actually in custody and has to be writted back from

12   wherever he is located by BOP to testify in trial, and so

13   forth, I think his situation is a little bit more risky than if

14   he is allowed to come into the Court and he doesn't have to go

15   through the channels and be associated with other persons in

16   custody and that kind of thing when he comes in to testify.

17             So it is a little bit easier for the marshals.  I know

18   they have a way to separate them if we request them.  I know

19   they're very good at that.  But I would just say in the sense

20   that since this particular individual is both a defendant and a

21   witness, if we could perhaps accommodate that interest, I would

22   really appreciate it.

23             THE COURT:  Counsel, I'm going to deny your motion at

24   this time because I do not know when this trial is going to

25   occur and I am not going to make a determination based on

 1    speculation.  If you would like to file a written motion to

 2    continue the sentencing hearing that's been set, I'll be happy

 3    to consider it.

 4              MR. TILL:  All right, your Honor.

 5              THE COURT:  Right now, sentencing is set for

 6    August 20, 2012.  The trial on charges against Mr. Khamsahu was

 7    vacated upon the filing of the notice of disposition.

 8              I'm not seeing any motions that need to be addressed.

 9    Have I overlooked anything?

10              MR. TILL:  I don't believe you have, your Honor.

11              MR. SAINT-VELTRI:  No, your Honor.

12              THE COURT:  Any issues with regard to conditions of

13    release?

14              MR. TILL:  No, your Honor.  He's doing well.

15              THE COURT:  All right.  Further business by the

16    Government or the defendant?

17              MR. TILL:  No, your Honor.

18              MR. SAINT-VELTRI:  No, your Honor.

19              The defendant asked me to bring it to the Court's

20    attention, and I'm thinking it's probably administratively

21    collateral to the Court's ruling; but he is seeking permission

22    to attend a funeral tomorrow and was not certain that with the

23    current status -- that is, him now having pled guilty --

24    whether or not needed to be accommodated by court order.

25              THE COURT:  Where is the funeral?

1          THE DEFENDANT:  It's at Pipkin -- I don't remember the

2    last name.  It's in Denver, though.

3          THE COURT:  So I'm not understanding what the issue

4    is.

5          THE DEFENDANT:  I was advised to bring it to the

6    Court's attention by my current probation officer.  She's --

7    that she had also let me -- given me some extra time out past

8    my normal times, and she just thought it necessary to bring to

9    your attention, your Honor.

10          THE COURT:  Well, I have no motion before me.

11          Mr. Saint-Veltri, what is it that you want?

12          MR. SAINT-VELTRI:  I guess I would orally move the

13    Court to permit the defendant as a condition of his pretrial

14    release, notwithstanding other conditions, to attend the

15    funeral tomorrow in Denver, Colorado, for the period of time of

16    the funeral, which I understand to be three hours.

17          THE COURT:  Well, what are the conditions of release

18    that need to be modified to allow that?

19          MR. SAINT-VELTRI:  The conditions of release is that

20    he is on electronic monitoring attendant to which he is only

21    given certain blocks of time that he is allowed to be outside

22    of his house, and he has now exceeded those blocks of time

23    because of his coming to my office in preparation for this

24    hearing.

25          THE COURT:  All right.  That falls within the

1   discretion of the probation officer, and I decline the request.

2   In other words, that is not something that I need to decide.

3   That is something he works out with the probation officer.

4        MR. SAINT-VELTRI:  I understand that, your Honor, and

5   that's why I reluctantly brought it to your attention.

6   However, I am relying on him, my client, telling me that the

7   probation officer suggested that he bring it to your attention.

8        THE COURT:  All right.  Well, I don't have the

9   probation officer here to tell me why the probation officer

10  said that.  It is a decision that is made by the probation

11  officer.  It is not something that needs to be brought to the

12  Court's attention unless the probation officer does not intend

13  to grant the request that Mr. Khamsahu has made, and that's not

14  what I'm hearing.

15       MR. TILL:  Your Honor, if I can just interject one

16  thing.  I think the Court covered this sufficiently, and I

17  understood what the Court was asking when the Court asking

18  about him staying out on bond.  It could be the probation

19  officer was thinking that after a person has pled guilty, they

20  might be remanded to custody.  But just to make it perfectly

21  clear, the Government agrees that he can stay on bond.  And

22  we're asking the Court to please leave him on bond.

23       THE COURT:  All right.  The conditions that are

24  currently in effect remain in effect.

25            And I frankly I don't even know who the probation

1   officer is that is supervising Mr. Khamsahu, but only if there

2   is a disagreement between them is there an issue to be

3   determined.

4         MR. SAINT-VELTRI:  Thank you, your Honor, for

5   indulging me with a request that I was not entirely confident I

6   should be making.  And I understand why, but it seemed to me

7   that the probation officer may have been seeking court guidance

8   in this regard.

9         THE COURT:  The problem is not -- in whether the

10  request should be made or not.  The problem is that's a request

11  that has to be made in the context of the probation officer's

12  stating a position.  And it is not appropriate for a probation

13  officer to tell a defendant that they need to come and get some

14  permission from the Court, when it's the probation officer who

15  has to state a position.  So I really just don't have anything

16  in front of me to resolve -- to even have an issue that needs

17  to be resolved.

18        Mr. Khamsahu, I suggest you work with your probation

19  officer.  And if there is an issue I'm happy to entertain it.

20        THE DEFENDANT:  Yes, your Honor.  There was no issue.

21  She merely stated that I just bring it to your attention, so

22  I'm just following what she asked me to do.

23        THE COURT:  Thank you.  I appreciate that.

24        All right.  Is there any further business we need to

25  address?

1          MR. TILL:  No, your Honor.  Thank you.

2          MR. SAINT-VELTRI:  No, your Honor.

3          THE COURT:  Thank you.  Then that will conclude this

4    matter, and we will stand in recess.

5        (Recess at 11:50 a.m.)

6                        *   *   *   *   *

7                    **REPORTER'S CERTIFICATE**

8        I certify that the foregoing is a correct transcript from

9    the record of proceedings in the above-entitled matter.  Dated

10   at Denver, Colorado, this 19th day of August, 2013.

11

12                                    *S/Paul A. Zuckerman*
                                       Paul A. Zuckerman
13

14

15

16

17

18

19

20

21

22

23

24

25