IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 12-cr-00010-MSK

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

SHEPS H. KHAMSAHU,

    Defendant.
_____

**REPORTER'S TRANSCRIPT**
Sentencing Hearing
_____

    Proceedings before the HONORABLE MARCIA S. KRIEGER,
Judge, United States District Court for the District of
Colorado, commencing at 1:33 p.m., on the 16th day of July,
2013, in Courtroom 901A, United States Courthouse, Denver,
Colorado.

**APPEARANCES**

    GUY TILL, Assistant U.S. Attorney, 1225 17th Street,
Suite 700, Denver, Colorado, 80202, appearing for the
Plaintiff.

    JOSEPH SAINT-VELTRI, Attorney at Law, 900 Logan Street
Denver, Colorado, 80203, appearing for the Defendant.

THERESE LINDBLOM, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Court is convened today in Case No.

 3   12-cr-10.  This is encaptioned the United States of America v.

 4   Sheps H. Khamsahu, is that right?

 5            THE DEFENDANT:  Khamsahu.

 6            THE COURT:  The matter is set down for sentencing.

 7   Could I have entries of appearance, please.

 8            MR. TILL:  Good afternoon, Your Honor.  Your Honor,

 9   I'm Guy Till.  I'm an assistant U.S. attorney representing the

10   Government.  Also present at counsel table is ATF Special Agent

11   Jason Cole, Your Honor.

12            THE COURT:  Good afternoon and welcome.

13            MR. TILL:  Thank you.

14            MR. SAINT-VELTRI:  Good afternoon, Your Honor.  Joseph

15   Saint-Veltri appearing on behalf of the defendant, who is

16   present at counsel table.

17            THE COURT:  Good afternoon and welcome.

18            Are you all ready to proceed?

19            MR. TILL:  Yes, Your Honor, the Government is ready.

20            MR. SAINT-VELTRI:  Ready for the defense.

21            THE COURT:  Thank you.

22            Mr. Saint-Veltri, would you and Mr. Khamsahu please

23   approach the lectern.

24            This matter is before the Court for purposes of

25   sentencing.  The record reflects that the defendant was charged
```

1    on January 9, 2012, in a 32-count Indictment.  He was charged

2    in Count 31 with conspiracy to use and maintain drug-involved

3    premises in violation of 21 U.S.C. Sections 846 and 856(a)(1)

4    and (2) and (b) and in Count 32 with using and maintaining a

5    drug-involved premises, aiding and abetting, in violation of 21

6    U.S.C. 856(a)(1), (2) and (b) and 18 U.S.C. Section 2.  There

7    also was a forfeiture allegation pursuant to 18 U.S.C. Section

8    3665 and 28 U.S.C. Section 2461(c) contained in the Indictment.

9           On February 6, 2012, a 38-count first superseding

10   indictment found at Docket No. 180 was filed.  And the

11   defendant was charged in Count 31 and Count 32 with essentially

12   the same charges.  There was also a forfeiture allegation in

13   that indictment.

14          On -- in response to both of the indictments, the

15   defendant entered pleas of not guilty, but on May 16, 2012, he

16   changed his plea to a plea of guilty to Count 31 of the

17   Indictment.  In accordance with the plea agreement, the

18   Government was obligated to dismiss Count 32.

19          I'm not seeing in our presentence report that that

20   motion was made at the time of the change of plea hearing.  Do

21   you recall whether it was or not?

22          MR. TILL:  Your Honor, it's possible I overlooked it.

23   If I did, I'd like to make the motion at this time, if I may.

24          THE COURT:  Okay.

25          MR. TILL:  Your Honor, the Government requests the

1    Court to dismiss Count 32 of the Indictment.

2         *THE COURT:* Does Count 31 reflect the seriousness of

3    the actual behavior?

4         *MR. TILL:* Yes, Your Honor it does.

5         *THE COURT:* If the Court were to grant your motion

6    would the sentencing objectives as set forth in 18 U.S.C.

7    Section 3553 be undermined in any fashion?

8         *MR. TILL:* No, Your Honor.

9         *THE COURT:* Thank you.

10        Mr. Saint-Veltri.

11        *MR. SAINT-VELTRI:* No objection to the motion.

12        *THE COURT:* All right.  Then the motion is granted.

13        I note that I accepted the defendant's plea, and the

14   defendant was adjudged guilty as charged in Count 31 of the

15   Indictment.  He's now before the Court for purposes of

16   sentencing.

17        I've had the opportunity to review of number of

18   documents in preparation for this hearing.  Docket No. 569,

19   which was the original presentence report; Docket 579, the

20   response filed by the defendant; Docket 585, a motion for a

21   non-guideline sentence filed by the defendant; Docket No. 592,

22   revised presentence report; Docket No. 593, an addendum to that

23   report; Docket No. 703, a further revised presentence report;

24   Docket 704, an addendum to that; Docket 742, a motion for

25   downward departure pursuant to Section 5K1.1 filed by the

1    Government; Docket No. 909, the Government's response to the

2    defendant's objections at Docket No. 579; and Docket 910, a

3    motion -- another motion for downward departure pursuant to

4    5K1.1 filed by the United States.

5            First of all, let me inquire of you, counsel, whether

6    you and the defendant have had adequate opportunity to review

7    and consider all of these documents.

8            *MR. SAINT-VELTRI:*  We have, Your Honor.

9            *MR. TILL:*  The Government also has, Your Honor.

10           *THE COURT:*  Thank you.  And with -- it appears to me

11   that the operative presentence report is that found at Docket

12   No. 703, and that it has addressed all of the objections that

13   were raised by the defendant to the initial presentence report.

14           Mr. Saint-Veltri, am I correct in that?

15           *MR. SAINT-VELTRI:*  You are, Your Honor.

16           *THE COURT:*  Thank you.  And with regard to that

17   presentence report, is there any objection to the facts

18   contained in the report?

19           *MR. TILL:*  Not from the Government, Your Honor.

20           *MR. SAINT-VELTRI:*  None by the defense.

21           *THE COURT:*  Any objection to the calculation of the

22   sentence under the sentencing guidelines?

23           *MR. TILL:*  Not from the Government, Your Honor.

24           *MR. SAINT-VELTRI:*  No, Your Honor.

25           *THE COURT:*  Thank you.

1          I see that the Government has filed two motions for a

2     departure.  I understand even though it's not indicated in the

3     record, that Docket No. 910 is intended to replace Docket No.

4     742; is that correct?

5          MR. TILL:  That is correct, Your Honor.

6          THE COURT:  Thank you.  Is there any further showing

7     you care to make with regard to Docket No. 910.

8          MR. TILL:  No, Your Honor.

9          THE COURT:  All right.  The docket also reflects that

10    there were a number of documents that were improvidently

11    docketed in -- with regard to Mr. Khamsahu.  And those are

12    found at Docket No. 727, 728, and 729.  Docket No. 727

13    requested the restriction of 728 and 729, and I will leave

14    those restricted because they do not pertain to Mr. Khamsahu.

15         Is there any -- I also note there is a request for a

16    variant sentence, and that's by the defense.  Do you care to

17    make an argument, Mr. Saint-Veltri?

18         MR. SAINT-VELTRI:  No, Your Honor.  I am -- we would

19    submit that issue on the basis of the motion which we filed.

20    And it is my recollection that that motion predates the final

21    presentence investigation report, which is Document 703.  And

22    apropos of that, we would ask that in conjunction with the

23    motion, the Court consider Document 703 and Document 704.

24         THE COURT:  So are -- am I understanding correctly,

25    you're not asking for a sentence that varies from that

1  recommended in Docket No. 703?

2       *MR. SAINT-VELTRI:*  We are, Your Honor.  We are asking

3  for a sentence to probation.

4       *THE COURT:*  Okay.

5       *MR. SAINT-VELTRI:*  Consistent with our motion for

6  non-guideline sentence.  I have no additional argument to

7  submit in conjunction with that motion, other than to invite

8  the Court to consider in conjunction with the motion the

9  information that is contained in the final presentence report.

10       *THE COURT:*  I've read the final presentence report;

11  but your sort of oblique reference to it and the particular

12  information you want me to consider, I'm not tracking.  What is

13  it in Docket No. 703, the revised presentence report, that you

14  want me to consider with regard to your motion for variance?

15       *MR. SAINT-VELTRI:*  For instance, Your Honor, in

16  paragraph -- I shouldn't say "for instance."  With the

17  admonition the Court has just made, paragraph 8 indicates --

18  states, rather, that the defendant is a first-time offender at

19  age 39, and numerous letters submitted by individuals who are

20  part -- associated with the general public suggest that he is

21  not a risk to the general public.  That is the paragraph that I

22  am referring to specifically.

23       *THE COURT:*  Okay.  Thank you.

24       *MR. SAINT-VELTRI:*  No, Your Honor.

25       *THE COURT:*  Any response to the motion for variance?

1          MR. TILL:  Your Honor, the Government submits that the

2    recommendation -- sentence recommendation from the probation

3    department is well thought out and some of the features that

4    are in there are home detention and a period of probation.  If

5    the Court does grant probation, I'd ask the Court to consider

6    that.

7          THE COURT:  So you concede the motion for variance; is

8    that right?

9          MR. TILL:  Yes, Your Honor.

10         THE COURT:  Okay.  Then let me hear any argument you'd

11    like to make with regard to sentence.  We'll start with

12    Mr. Saint-Veltri.

13         MR. SAINT-VELTRI:  Your Honor, if I may simply outline

14    two or three features of this case and my client's connection

15    with the criminal activity, the count to which he pled guilty.

16         As the Court knows from the presentence report, my

17    client was a member of and had some role in the club, the

18    motorcycle club known as the Hells Lovers.  We submit to the

19    Court that the presentence report and the other information

20    which has been made available to the Court through the various

21    documents indicates that this was not a typical motorcycle club

22    as portrayed in the cinema or the various novels that have

23    demonized -- appropriately so, I suppose, on some occasions --

24    the activities of motorcycle gangs.  This club was a

25    relatively -- relatively moderate in all of their activities.

1    The drug use that is -- that occurred at the clubhouse was

2    generally limited to marijuana, which is not to say that it was

3    legal use of marijuana at the club, although certain of the

4    individuals may actually have been legally entitled to smoke

5    marijuana pursuant to Colorado law, not federal law.

6            The defendant, we submit, had a positive influence on

7    the club, in the overall sense that the club did not engage in

8    any specific acts of violence, did not have the violent rituals

9    that are often associated with the induction of new members

10   into the club, and, overall, the club's activities were mostly

11   recreational.  And we submit, that was due in large measure to

12   this defendant's philosophy about how the club should conduct

13   itself.

14           As the Court knows, the defendant is now in his 40s, a

15   grown-up, and this is his first criminal offense.  We would

16   submit to the Court that the duration of this case has had an

17   amelioratory effect on the defendant.  He is no longer a biker

18   in the sense of being the type of biker that he was when he was

19   a member of the club, the Hells Lovers.  He rides bikes

20   recreationally from time to time, but his association with

21   those individuals has been severed completely, not only because

22   of his -- hopefully, his maturation, which has occurred, but

23   also because of his cooperation with the Government, which has

24   had an impact on who -- which members of the club or former

25   associates of the club are willing to associate with him at

1    this time.

2         We submit that the nature of the offense and the

3    defendant's particular history in this case warrant a

4    non-guideline sentence to probation.

5         THE COURT:  Thank you.

6         Mr. Till.

7         MR. TILL:  Your Honor, I don't agree with the way

8    Mr. Saint-Veltri characterizes the Hells Lovers motorcycle

9    club, but I don't actually think that's so critical here.  This

10   particular defendant did cooperate with the Government.  He did

11   come in to debrief.  He is an intelligent person.  He's a

12   college graduate.  He does have organizational and leadership

13   characteristics or skills.  He was an officer in the club; but

14   in that particular club, being a named officer doesn't

15   necessarily mean you are the boss of the club.  There is sort

16   something other than a democracy.  It's not like you elect your

17   president or vice president.  There is a board of directors

18   group that stays in the background and decides how things are

19   going to go.

20        He basically decided to take responsibility for what

21   he did.  He did meet with us.  He has been available to

22   testify.  Of all the defendants in this case, he seemed to be

23   the one most eager in to get on with his life.  I hope that is

24   a good sign.

25        My concern about him not -- it's extraordinarily bad

1    judgment I submit for a person with his abilities to involve

2    himself in an outlaw motorcycle gang, so I'm still somewhat

3    worried about him.  And I would submit to the Court that

4    probation can be helpful for a person.  I believe he has

5    benefitted from probation.  If the Court is going to give

6    probation, I'd ask the Court to give him a substantial period

7    of probation.

8             THE COURT:  What do you consider a substantial period

9    of probation?

10            MR. TILL:  Two years, Your Honor.

11            THE COURT:  Thank you.

12            Mr. Khamsahu, what would you like me to know?

13            THE DEFENDANT:  I think the last year and a half, 18

14   months, I've had a lot of time to reflect, being separated from

15   what I've been used to for ten years prior to that.  When I

16   joined my first club, which was not this club, it was purely

17   recreational.  When I joined the second club, it was because I

18   was used to the camaraderie of my first club.  And one of the

19   things that I chose was to be ignorant.  There is a saying,

20   ignorance is bliss, it's folly to be wise.  And I chose to

21   ignore things that I should not have chosen to ignore.  And

22   it's had a great effect on my family and my friends and the

23   community.

24            I would like to apologize for my role in those

25   activities.  And since then -- prior to this happening, the

1    month before, I actually lost my business.  And I knew I was

2    losing my business, and I was at a crossroads.  I wasn't sure

3    what I was going to do.  And this period has kind of

4    reinvigorated me to move on with more positive things that I

5    had been wanting to do.  I've been working for the last year,

6    as well as I just finished real estate school, and I have

7    interviews next week to pursue that.

8         So I'm looking forward to being able to -- may sound

9    silly, but repay my family for at least the monetary part of

10   what they've contributed to my survival for this last year and

11   a half, as well as just continue to be there for my children.

12   And, really, you know, I have remorse for -- and reflection,

13   have remorse for that period of my life.

14        *THE COURT:*  What was it that you did wrong here?

15        *THE DEFENDANT:*  Well, I knew there was marijuana in

16   the clubhouse, and --

17        *THE COURT:*  So you didn't turn a blind eye to that;

18   you knew it was going on?

19        *THE DEFENDANT:*  Yes.

20        *THE COURT:*  What else did you do?

21        *THE DEFENDANT:*  Well, I didn't necessarily speak up

22   about it -- well, not necessarily.  I didn't speak up about it.

23   Things that I -- there are a lot of things I spoke up about;

24   that was not one of them.

25        *THE COURT:*  No.  And you used it too, didn't you?

1        THE DEFENDANT:  Yes, I did.

2        THE COURT:  Uh-huh.  What else did you do?

3        THE DEFENDANT:  Well, that was definitely a part of

4   it.  One of the things I chose to do, and I don't think there

5   will be much grayness about it, but I chose to leave at 3:00 in

6   the morning.  And this is -- this goes back to what I was

7   saying earlier, because I knew that there were things that

8   happened after 3 o'clock when I was not there and when other

9   people were not there.  And so I chose to take myself out of

10   that situation instead of being responsible for that

11   situation -- for those situations and making sure that they

12   didn't happen.

13        THE COURT:  So you let them happen?

14        THE DEFENDANT:  I wouldn't necessarily say I let them

15   happen, because I was not in control of people, per se.

16        THE COURT:  But do you think they would have happened

17   if you had stayed?

18        THE DEFENDANT:  Yeah.

19        THE COURT:  Then why did you leave?

20        THE DEFENDANT:  Why did I leave?

21        THE COURT:  Uh-huh.

22        THE DEFENDANT:  Well, because it's not something I

23   participated in.  And, you know, I did have children at my

24   house, and I just always thought that that was a decent time to

25   leave.

1          *THE COURT:*  3 o'clock in the morning?

2          *THE DEFENDANT:*  (Nodded head.)

3          *THE COURT:*  Okay.

4          Mr. Khamsahu, you're very polished, you're very well

5   spoken, but I don't think you're being real honest with

6   yourself, and I'm not really sure if you're being honest with

7   me.  The reason I say that is, you speak elliptically.  And in

8   order to be really remorseful for what you've done, you have to

9   state what you did and be sorry for it.  Not sorry for

10  circumstances, not sorry for what happened in your life, sorry

11  for what you did.

12         Now, is there anything other than the items that

13  you've acknowledged right now that you're sorry for?

14         *THE DEFENDANT:*  Well, I'm sorry that I didn't use my

15  abilities of leadership to foster a more positive environment,

16  really.  I mean --

17         *THE COURT:*  That's something you didn't do.  Are you

18  sorry for anything else you did do?

19         *THE DEFENDANT:*  I think I'm having a problem

20  understanding outside of the framework of the count what you're

21  asking me.

22         *THE COURT:*  Okay.  Let me be real blunt with you, sir.

23         *THE DEFENDANT:*  Sure.

24         *THE COURT:*  I'm going to be sentencing you for the

25  charge that you have entered a plea of guilty to.  In

1    determining what sentence is appropriate, I have to make an

2    assessment of how well you have processed what has happened and

3    what you have learned from it.  Because if you have not learned

4    from it, then you have a risk of repeating that behavior in the

5    future.  This isn't about legalese; this is about authenticity.

6    And that's why I say, as articulate as you are and as bright as

7    you are, you're not being very direct, and that's not helping

8    me understand whether you're likely to commit a crime in the

9    future.

10            *THE DEFENDANT:*  Well, you know, I -- I'm not

11   attempting to skate around it.  You know, I have no other way

12   of speaking, other than how I speak.  I am being genuine, and I

13   am remorseful.  I mean, this has been -- it's been a very tough

14   period in my life.  And, you know, the effects on my children

15   alone have been tremendous.  You know, I -- I do feel the

16   responsibility because, you know, even though I was in a

17   position in my club, you know, I'm also in a position in my

18   community, I'm also in a position in my family.  And for some

19   time after this happened, you know, I really buried my head in

20   the sand, and I thought about the things that had happened, and

21   I thought about things that people had said to me while I was

22   in the club, in terms of not being in the club, or, why are you

23   there?  And, you know, I've had to look back on that.

24            So, you know, as I said, I'm -- I am being direct,

25   and, you know -- me looking forward, I don't see those

1    activities in my life.  I don't see those in my life.

2         THE COURT:  What activities?

3         THE DEFENDANT:  Well, you know, in terms of just --

4    I'm trying to not have to tell, like, a story.  But what I feel

5    like is, you know, I had a job as a social worker for 12 years.

6    And I ended up leaving that job because I felt unappreciated,

7    not by the children that I was helping nor the families, but by

8    my company.  We actually went to a lawsuit over a promotion,

9    and I really felt like that they -- they didn't appreciate what

10   I was bringing to the table.  Where, here, you know, I felt

11   like what I was doing was appreciated.  So --

12        THE COURT:  In the club?

13        THE DEFENDANT:  In the club.  So in a sense, it was a

14   feeling of appreciation.  But since that has not been in my

15   life for the last year and a half, I've had to find myself.

16   And within that, you know, just the reference letters alone --

17   I mean, you don't really think about what people think about

18   you until I sat and I read them.  And, you know, I was very

19   moved how people view me, you know.  And as I said, it's driven

20   me to continue my education and to be steady in work and just

21   really stay away from any and all activities that could be

22   counterproductive to that.

23        And I feel good about that.  It reminds me of when I

24   was younger and in college, and I was -- I remember a long

25   period where I didn't do anything, I mean, down to, I didn't

 1   even eat sugar for four years, you know.  So as I said, you

 2   know, this has been a learning experience and reinvigorating me

 3   to do things.  And I understand -- when I'm looking at the

 4   wrong I did, you know, my strongest attribute was probably the

 5   ability to foster a healthy relationship, and I didn't do that.

 6   I didn't do that within the club setting the way that I should

 7   have, or could have.  And now that that is no longer there, and

 8   I've seen all the things that have happened, that's really not

 9   important to me.

10        THE COURT:  Mr. Khamsahu, you weren't prosecuted for

11   not being a leader.  What were you prosecuted for?  What am I

12   sentencing you for?

13        THE DEFENDANT:  You're sentencing me for -- I'm having

14   a brain lapse -- but conspiracy to maintain a drug-involved

15   premises.  I can't think of the full sentence now.

16        THE COURT:  Participating in a club that engaged in

17   criminal activity in which you participated.

18        THE DEFENDANT:  Yes.

19        THE COURT:  Right?

20        THE DEFENDANT:  Yes.

21        THE COURT:  And it has nothing to do with being a

22   leader.  That has to do with illegal conduct.

23        THE DEFENDANT:  Yes.

24        THE COURT:  All right.  Now, if you were going to --

25   let me phrase this a little differently.  If you were going to

 1    tell one of your children not to make the same mistake you did,

 2    what would you tell them?

 3            THE DEFENDANT:  I do tell my children that, so it's

 4    not really a "what if."  I do tell my children.

 5            THE COURT:  What do you tell them?

 6            THE DEFENDANT:  Well, I tell them about the effects on

 7    my life, and I tell them about the -- the disappointment I have

 8    in myself for not -- for basically losing my path for a while.

 9            THE COURT:  So you tell them how you feel about it.

10    What do you tell them to do and not do?

11            THE DEFENDANT:  I do tell them about marijuana and

12    about other drugs.  They're both at that age where it's

13    prevalent.  My daughter is 21, my son is 19.

14            THE COURT:  What do you tell them about it?

15            THE DEFENDANT:  I tell them that they have to -- that

16    they have to -- that there is other things that they can be

17    doing, basically.  You know, I -- I'm trying to push for them

18    to be school full-time.  They're both in school, but be in

19    school full-time.  And that life is long.  And that even though

20    it doesn't seem long, you know, especially when you're 19 and

21    21, you're not thinking 15 years in the future.  So, basically,

22    I tell them that if they take care of the things that they need

23    to take care of at an early age, they won't have to do what I'm

24    doing at 40, which is go back to school.  You know, they can

25    get that done at 22 or 23.  And, you know, just that -- it's a

1    very unhealthy life-style.  And so I basically just try to

2    guide them to what I believe -- not by my example, but what I

3    believe is the best possible healthy life-style.

4            THE COURT:  Is there anything else you want me to

5    know?

6            THE DEFENDANT:  No, Your Honor.

7            THE COURT:  Thank you.

8            Any further argument?

9            MR. TILL:  No, Your Honor.

10           THE COURT:  Thank you.

11           Mr. Saint-Veltri?

12           MR. SAINT-VELTRI:  Your Honor, if I may.  I detect

13   that the dialectic here that my client is offering is not

14   adequately convincing.  And I submit to the Court that it is

15   difficult -- maybe because of this court's position in federal

16   judiciary, it may be difficult for the Court to appreciate that

17   marijuana use is extraordinarily prevalent --

18           THE COURT:  Mr. Saint-Veltri, I've been around a long

19   time.  I have five children.  I'm not surprised.

20           MR. SAINT-VELTRI:  May I take it to the next level?  I

21   was going to say very prevalent.  It has also lost the stigma

22   of being illegal in the state of Colorado.  That does not exist

23   anymore.  There is no criminal sanction associated with most

24   marijuana activity.  I think it is difficult for my client to

25   make the concession that marijuana is something that ruins

1    lives.  It's ruined his life, and it might ruin his children's

2    life, and he counsels them to avoid marijuana because it will

3    ruin your life, I think that is not plausible or tenable any

4    longer.

5         *THE COURT:*  Thank you, Mr. Saint-Veltri.  That's not

6    my concern.  I'll address my concern as I announce my sentence.

7              I'll announce the sentence I intend to impose.  Of

8    course, counsel, you'll have an opportunity to make objections

9    before judgment is entered.  And if you believe that the

10   sentence is premised upon error or I raise an issue you haven't

11   had adequate opportunity to address, I invite you to request a

12   continuance.

13             Imposition of a sentence in a federal criminal case is

14   governed by a number of statutes.  The umbrella statute is 18

15   U.S.C. Section 3553.  In imposing sentence in this case, as in

16   all cases, I'm required to consider the objectives and the

17   factors set forth in Section 3553(a).  Section 3553 requires

18   that the sentence be sufficient but not greater than necessary

19   to satisfy particular objectives.  The sentence must reflect

20   the seriousness of the offense; promote respect for the law;

21   provide just punishment; adequately deter criminal conduct;

22   protect the public from further crimes by the defendant; and

23   provide the defendant with needed educational or vocational

24   training, medical care, or other correctional treatment in the

25   most effective manner.

1            To fashion a sentence that meets these objectives, the

2    statute tells me what factors to consider.  The nature and

3    circumstances of the offense; the history and characteristics

4    of the defendant; the kinds of sentences that are available,

5    the sentence prescribed by the federal sentencing guidelines;

6    and the need to avoid unwarranted sentence disparities among

7    defendants with similar records found guilty of similar

8    conduct.

9            At the beginning of this hearing, I identified the

10   documents I had studied in preparation for the hearing;

11   confirmed with counsel that they and the defendant had had an

12   opportunity to review those documents; asked if there were any

13   other documents to consider, and there were not; asked whether

14   there was any dispute with the factual information, Docket No.

15   703, which is the most recent presentence investigation report,

16   and there was not; asked if there was any dispute as to the

17   calculation of the sentence under the federal sentencing

18   guidelines as set forth in that report, and there was not.

19           Mr. Khamsahu has pled guilty to violation of 21 U.S.C.

20   Sections 846 and 856(a)(1) and (2) and (b).  The sentencing

21   guideline that sets the Base Offense Level for such violation

22   is Section 2D1.8.  Because the type and the amount of drugs

23   involved in this offense was approximately 8.58 kilograms of

24   marijuana, the Base Offense Level is 14.  There are no specific

25   offense characteristics under Section 2D1.1(b)(1), but there is

1    under 2D1.1(b)(12), a two-level increase because the defendant

2    maintained a premises for the purpose of manufacturing and

3    distributing a controlled substance.

4            According to the stipulation of facts, the defendant

5    paid monthly dues to support the Hells Lovers motorcycle club

6    activities, which included maintaining and using the clubhouse,

7    and he was aware of and participated in the illicit drug use by

8    members.

9            Then there is a reduction in the specific offense

10    characteristics.  Under 2D1.1(b)(16), there is a two-level

11    decrease.  And that decrease is extended because the defendant

12    meets the criteria set forth in subdivisions (1) through (5) of

13    subsection (a) of Section 5C1.2.  The resulting adjusted

14    offense level is 14.  Then Mr. Khamsahu receives an additional

15    downward adjustment for acceptance of responsibility.  That's a

16    two-level decrease pursuant to Section 3E1.1(a).  The resulting

17    offense level is 12.

18            Now, under the guidelines, the second component in the

19    sentence computation is the defendant's criminal history.

20    Here, he has no criminal history that has been assigned any

21    points.  He has no juvenile adjudications, he has no adult

22    criminal convictions, and so he falls in the lowest criminal

23    history category, that being Criminal History Category I.

24            With a Criminal History Category of I and an offense

25    level of 12, the guidelines recommend a custodial time period

1    of 10 to 16 months, followed by 1 to 3 years of supervised

2    release, a fine of 3,000 to $500,000, and a special assessment

3    of $100.

4            The Government has moved for a downward departure in

5    two motions brought under 5K1.1 of the guidelines.  Those are

6    Docket No. 742 and 910.  I deny both of those because there is

7    no specificity as to either what the information that

8    Mr. Khamsahu provided or the benefit that was achieved

9    therefrom.  The motions are essentially boilerplate motions

10   with conclusory statements.  So the guideline calculation stays

11   as it is reflected in Docket No. 703.

12           The defendant moves for a variant sentence under 18

13   U.S.C. Section 3553.  And I understand the variance request to

14   be based upon his history and characteristics as reflected in

15   the letters that have been submitted on his behalf, the fact

16   that he has no criminal history, and the fact that he has

17   cooperated with the Government and been compliant with the

18   terms that have been imposed with regard to his release

19   presentence.

20           I think a variant sentence is appropriate here.  And I

21   note that the Government agrees with the probationary request

22   as a variant sentence.  I intend to impose probation in lieu of

23   a custodial sentence; I intend to impose 2 years of probation.

24   And in my questioning of Mr. Khamsahu, the reason that I

25   prodded with regard to specific understanding of what he did

1    wrong here is because I wanted to figure out what special

2    conditions of supervision were appropriate.

3           Mr. Khamsahu indicates to me in generalities that this

4    has been a really hard time in his life, and I get that.  I

5    know it's been hard on his family as well.  But he's not very

6    precise or really very reflective as to what he has done that

7    got him here.  And while I understand that this was aberrant

8    behavior in the sense that he -- this club was different than

9    the prior motorcycle club he belonged to, what I hear and what

10   he says is, it was a way of making him feel valued, to be an

11   officer in this club.  And therefore, he essentially put up

12   with or participated in conduct that he might not otherwise

13   have done because it made him feel good, it made him feel

14   important, especially after his job hadn't turned out the way

15   he wanted.

16          Now, there is a big difference between being a good

17   person or a bad person and what happens in sentencing.

18   Sentencing isn't about being a good person or a bad person.

19   It's not about, frankly, whether marijuana is legal or not

20   legal.  When we look at whether a person is a good person or a

21   bad person, I look at it from the standpoint of someone much

22   wiser than I, which says, you're as good a person as the best

23   deed you've done, and you're as bad a person as the worst deed

24   you've done.

25          Now, I don't know what the best deed is, and I don't

 1   know what the worst deed is.   The focus of sentencing is

 2   holding somebody accountable for the conduct that gave rise to

 3   the conviction.   And what's important to me is that

 4   Mr. Khamsahu recognized that conduct, decides not to engage in

 5   that conduct again.   I've not heard that.   And my concern about

 6   that is that if it's important to be honored and respected,

 7   such as an officer in a motorcycle gang, that that may be

 8   something that may motivate Mr. Khamsahu to be involved in

 9   other associations or with other people who respect him and

10   honor him and engage in other conduct which is not consonant

11   with the very favorable views and comments reflected in the

12   letters that I received.

13          And as a consequence, I am going to impose a special

14   condition on probation that Mr. Khamsahu engage in a mental

15   health assessment and mental health counseling if warranted at

16   the direction and so long as directed by the probation officer.

17          Now, one of the interesting things that came out in

18   the presentence report is a question as to whether Mr. Khamsahu

19   has a substance abuse problem.   He hasn't mentioned that.   And

20   he did engage in marijuana use.   And I recognize that marijuana

21   under Colorado state law is now legal.   It wasn't when he was

22   using it.   And I think that given the history reflected in the

23   presentence report, that that's an area that Mr. Khamsahu needs

24   to be reflective about as well, how he relates to alcohol and

25   drugs.   And so I am going to impose a special condition that he

1  participate in a substance abuse evaluation and rehabilitation

2  program as well, so long as directed to by the probation

3  officer.

4        I'm not going to impose a fine, because Mr. Khamsahu

5  both lacks the ability to pay a fine, and he also has children

6  who are dependent upon him for support, which would interfere

7  with the payment of the fine.  The special assessment of $100

8  is mandated by statute.

9        So to recap, the sentence that I intend to impose is 2

10  years of probation, with two special conditions and all the

11  standard conditions, no fine, and a special assessment of $100.

12        Is there a need for clarification, explanation, or a

13  request for a continuance?

14        *MR. TILL:*  Not from the Government, Your Honor.

15        *MR. SAINT-VELTRI:*  No, Your Honor.

16        *THE COURT:*  Then having considered the provisions of

17  18 U.S.C. Section 3553 and enunciated my reasoning with regard

18  to the sentence I intend to impose, pursuant to the Sentencing

19  Reform Act of 1984, it is the judgment of the Court that the

20  defendant, Sheps H. Khamsahu, be placed on probation for a term

21  of 2 years.  While on supervision, he will not commit another

22  federal, state, or local crime; he will not possess a firearm

23  as defined in 18 U.S.C. Section 921; and he'll comply with the

24  standard conditions that have been adopted by the Court.  He

25  will not unlawfully possess a controlled substance, he will

1    refrain from any unlawful use of a controlled substance, he

2    will submit to at least one drug test within 15 days of release

3    on supervised release and at least two periodic tests

4    thereafter, he'll cooperate in the collection of DNA as

5    directed by the probation officer, and he'll pay a special

6    assessment of $100, which is due and payable immediately.

7          I also impose two special conditions which are

8    consonant with the provisions of 18 U.S.C. Section 3553 in the

9    provision governing supervised release.  And those conditions

10   are that he participate in a mental health evaluation and

11   counseling if recommended at the direction and for so long as

12   directed by the probation officer.  And to the extent he is

13   able to pay and directed to pay by the probation officer, he

14   will pay for such treatment.

15         He will also participate in an assessment and

16   treatment if recommended for substance abuse.  For so long as

17   he's directed to by the probation officer and to the extent

18   that he is able and directed to by the probation officer, he

19   will pay for such treatment.

20         To the extent, Mr. Khamsahu, that you have a residual

21   right to appeal your sentence, you need to do so within 14

22   days.  You do so by filing a notice of appeal.  Ordinarily,

23   Mr. Saint-Veltri would file that notice for you; but if for

24   some reason he's unable or he's unwilling to do, so you may

25   request and I will direct the Clerk of Court to file a notice

1   of appeal on your behalf.

2          Is there any further business to bring before the

3   Court?

4          MR. TILL:  Not from the Government, Your Honor.

5          MR. SAINT-VELTRI:  No, Your Honor.

6          THE COURT:  Thank you, Mr. Till; thank you,

7   Mr. Saint-Veltri; thank you to our probation officer; thank you

8   to our marshal staff and our courtroom staff.

9          Is there a bond that needs to be exonerated,

10  Mr. Saint-Veltri?

11         MR. SAINT-VELTRI:  I wish I knew the answer to that,

12  Your Honor.  May I -- it's my recollection that the defendant's

13  on a PR bond.  And if so, we'd ask that the PR bond be

14  discharged and exonerated.

15         THE COURT:  Why don't I just deal with any bond and

16  exonerate it at this time, and that will resolve the issue.

17         MR. TILL:  Agreeable.  Thank you.

18         THE COURT:  Then, thank you very much.

19         Good luck to you, Mr. Khamsahu, hope not to see you

20  back here again.  And we'll stand in recess.

21         (Recess at 2:23 p.m.)

22

23

24

25

1                    REPORTER'S CERTIFICATE

2

3        I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

4

5        Dated at Denver, Colorado, this 25th day of August, 2013.

6                                    s/Therese Lindblom

7                          _____

8                          Therese Lindblom,CSR,RMR,CRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25